UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON-ISSA KARKAR,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 14-cv-01044-JST<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 35 |

Before the Court is Defendant State Farm General Insurance Company's Motion for Summary Judgment. ECF No. 35. For the reasons set forth below, the Court will grant the motion.

## I.   BACKGROUND

### A.   Factual Background

#### 1.   State Farm Claim

In June 2010, Plaintiff Jason-Issa Karkar applied for a State Farm General Insurance Company ("State Farm") homeowner's insurance policy for a property located at 1619 Willow Avenue in Burlingame, California through State Farm agent Jimmy Harrington. Homeowners Application - CA ("Insurance Appl."), ECF No. 42, Ex. 9, at 1. The State Farm Application included the following language:

> Has applicant had any losses, insured or not, in the past 5 years: No
> Is there any damage to the dwelling that has not been repaired: No

Id. State Farm issued policy number 57-BP-C289-1 to Plaintiff, with coverage beginning on July 1, 2010. Insurance Appl. at 1; Certified Policy Record ("Policy"), ECF No. 42, Ex. 10. The policy in effect between July 1, 2012 and July 1, 2013, included a "Concealment or Fraud" provision, which states, "This policy is void as to you and any other insured, if you or any other

insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss." Policy at 20.

In November 2012, Karkar filed a claim for damage to the property, stating that "due to high winds a large tree limb from an oak tree broke off and hit the side of the house damaging gutters, roof, [and] balcony." State Farm Fire Claim File, ECF No. 53, Ex. G, at PEI-119. When State Farm Claim Representative Tasha Lane inspected the property on December 7, 2012, she concluded that the property "had a rot issue." Deposition of Tasha Lane, ECF No. 42, Ex. 6, at 27-28, 39; ECF No. 42, Ex. 11 at 1. Claim Representative Ricky Harris inspected the property in January 2013, and similarly identified some areas of rot. Deposition of Ricky Harris, ECF No. 42, Ex. 7 at 29, 34-35, 50; ECF No. 42, Ex. 12.

At his deposition, Plaintiff testified that, to his knowledge, there was no prior water-related damage to the areas of the house where the tree branch caused water intrusion damage. Deposition of Jason-Issa Karkar ("Karkar Dep."), ECF No. 42, Ex. 1, at 76-77, 80-82. He also testified that, during State Farm's investigation of his claim, he informed State Farm that there was no water intrusion or water damage prior to the tree branch hitting the home. Id. at 108-09.

State Farm paid approximately $6,700.00 for emergency mitigation services and temporary repairs, $12,158.60 for covered repairs, and a supplemental payment of $8,462.09, but stated that repairs necessitated by preexisting rot and wear and tear were not covered under the policy. See ECF No. 42, Exs. 13-17; ECF No. 35 at 6,8; ECF No. 46 at 11 & n.6.

### 2. Farmers Claim

At the time Plaintiff applied for a State Farm insurance policy, the home was insured by Farmers Insurance ("Farmers"). Insurance Appl. at 1. A Farmers Loss Report, dated September 2, 2010, indicates that Plaintiff reported a "water leak – plugged gutter," affecting the "balcony, windows, bedroom, family room, [and] master bedroom." ECF No. 42, Ex. 25. The report states that the date of the loss was May 10, 2010. Id.; see also Declaration of Sarah Send in Support of State Farm's Motion for Summary Judgment, ECF No. 40, ¶¶ 3-4. The Farmers claim file includes photographs of the areas Farmers inspected. Declaration of Scott Jensen in Support of State Farm's Motion for Summary Judgment, ECF No. 41, ¶¶ 3, 12; ECF No. 42, Ex. 33. Among

2

these images are photographs of living room windows and a balcony on the side of the house involved in the State Farm tree branch claim. ECF No. 42, Ex. 33, at 1-3, 6-9; Karkar Dep. at 55-56, 151-52, 156, Exs. 5, 26, 32; Deposition of John Karkar ("J. Karkar Dep."), ECF No. 42, Ex. 5, at 66-67, Exs. 6, 14, 15.

The Farmers photographs of the living room windows show that the windows had plastic bags under them when Farmers inspected the property. ECF No. 42, Ex. 33 at 1, 3. Plaintiff's brother, John Karkar, testified at his deposition that his father had placed a plastic bag in the window "[b]ecause the water was coming from the top on the walls to the window, so he figured out to put the water – to let the water come out." J. Karkar Dep. at 66-67. He stated that the bag was placed in the window before the tree branch incident. Id. at 67. Photographs of the balcony show that the areas that Plaintiff claims were affected by the falling tree branch in 2012 were also damaged when Farmers investigated the 2010 loss. Compare ECF No. 42, Ex. 23-24, with ECF No. 42, Ex. 33.

Farmers denied Plaintiff's "claim for water damage" in September 2010. ECF No. 42, Ex. 28. The denial letter from Farmers representative Emma Niven stated in part:

> During my inspection, I determined that the tree near the balcony has deposited debris into your gutters over a period of time causing them to block. Rain water has then entered the gutters and slowly seeped into other areas of the home including the balcony wood, behind the balcony rail and flooring, behind the stucco and around the window of the bathroom. The standing rain water to the balcony could not drain away due to the pitch of the balcony along with the clogged gutters. . . . During the rainy period, the increase in rain water falling along with the clogged gutters and worn caulking, were unable to keep the water from entering your home.
>
> The balcony rail to your upstairs bedroom had rotted along with a portion of the balcony floor and wood underneath the tile. The framing underneath the tile appeared to be rotted also. The gutter attached to the exterior side of the balcony was partially dislodged from its normal position and rot was evident behind it. The casing to the exterior lounge room window and door was rotted, along with the casing around the exterior door to the kitchen and bathroom casing. Additionally, there is warping and rot to the wood flooring around the sliding exterior door. . . .

> You advised at the time of the inspection, that the damages have been known to you since approximately March/April 2010.

ECF No. 42, Ex. 28. Plaintiff's responses to State Farm's interrogatories indicated that he performed only "regular maintenance work," including painting and gutter clean up, at the property between 2010 and 2012. ECF No. 42, Ex. 3, at 14-15.

### B.     Procedural Background

Plaintiff commenced this action on November 12, 2013, by filing a complaint in the Superior Court of the State of California, San Mateo. ECF No. 1, Ex. 1. The operative First Amended Complaint was filed on January 22, 2014, and alleges breach of the parties' insurance contract and breach of the implied covenant of good faith and fair dealing. ECF No. 2, Ex. 2. Plaintiff alleges that "[w]ith malice and oppression and knowing that the premises were heavily damaged by the tree and by the water intrusion provoked by the impact of the tree, Defendant summarily refused to pay for the vast majority of the damages caused by the fallen branches" and "refused to take any further actions with complete disregard to the Plaintiff's health and safety." Id. ¶ 15. Defendant removed the action to this Court on March 5, 2014. ECF No. 1.

On June 12, 2015, State Farm filed the instant motion for summary judgment or, in the alternative, partial summary judgment. ECF No. 35. Plaintiff opposes the motion. ECF No. 46.

### C.     Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. section 1332(a).

## II.    LEGAL STANDARD

Summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The Court must draw all reasonable inferences in the light most favorable to the non-moving party. Olsen v. Idaho State Bd. Of Med., 363 F.3d 916, 922 (9th Cir. 2004).

4

## III.  DISCUSSION

Defendant argues that: (1) material misrepresentations in Karkar's application for the insurance policy mandate summary judgment for State Farm; (2) material misrepresentations in Karkar's claim provide a separate and independent basis to grant summary judgment for State Farm; (3) Karkar's bad faith claim fails because State Farm handled his claim reasonably as a matter of law; and (4) Karkar's punitive damages claim fails because there is no evidence that State Farm acted with malice, fraud, or oppression. ECF No. 35. Because the Court concludes that State Farm is entitled to judgment as a matter of law because Karkar made material misrepresentations in his claim, the Court does not address State Farm's remaining arguments.

### A.  Breach of Contract

California substantive law governs this diversity action. Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 536 (9th Cir. 2001). In California, "[a] fraud and concealment provision in an insurance contract will generally void the policy where an insured attempts to defraud the insurer." Ram v. Infinity Select Ins., 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011) (citing Leasure v. MSI Ins. Co., 65 Cal. App. 4th 244, 248 (1998)). To void the policy, an insured's misrepresentation must relate to a material matter, and must be knowingly and intentionally made, with the intent to deceive or defraud the insurer. Leasure, 65 Cal. App. 4th at 248; Pedrotti v. Am. Nat'l Fire Ins. Co. of Columbus, Ohio, 90 Cal. App. 668, 671 (1928). "[W]here a plaintiff knowingly and willfully, with intent to deceive the insurer, makes false statements as to material matters in the course of the insurer's investigation of his claim, the defendant is entitled to summary judgment on the plaintiff's breach of contract claim." Ram, 807 F. Supp. 2d at 853 (citing Cummings v. Fire Ins. Exch., 202 Cal. App. 3d 1407, 1418-19 (1988)). "[T]he intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured willfully makes it with knowledge of its falsity." Cummings, 202 Cal. App. 3d at 1418; see also Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 95 (1884). A misrepresentation is "material" if it "concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented." Cummings, 202 Cal. App. 3d at 1417. Materiality may be decided as a matter of law if reasonable minds could not differ as to the materiality of the

5

misrepresentation. Id.[1]

Here, Plaintiff informed State Farm that there was no water intrusion damage on the balcony side of the house before the tree branch incident in November 2012. Karkar Dep. at 108-09. But the Farmers claim file establishes that in September 2010 he filed a claim for a loss caused by a "water leak" affecting the same balcony and living room windows. ECF No. 42, Exs. 23-25, 33. Karkar's brother testified that plastic bags were placed in the windows before the tree branch incident in order to mitigate water intrusion. J. Karkar Dep. at 66-67.

Plaintiff acknowledges that he made the 2010 Farmers claim, and that during the claims process he denied to State Farm that the property had water damage before the tree branch incident. ECF No. 46 at 3-4. He does not dispute the authenticity of the Farmers claim file documents. But he denies that his statements to State Farm were false, or willfully made with knowledge of their falsity, because he continues to deny that (apart from an unrelated incident in the kitchen on the opposite side of the house) the property had any water damage before the tree branch incident. Id. at 4-7 (citing Declaration of Jason-Issa Karkar in Opposition to State Farm's Motion for Summary Judgment, ECF No. 49; Declaration of John Karkar in Opposition to State Farm's Motion for Summary Judgment, ECF No. 51 ¶ 3 (stating that he did not intend to say in his deposition that water entered the family room before the 2012 tree impact incident and that his father placed plastic on the window "as a protective measure")).

---

[1] In his opposition, Karkar argues that he informed State Farm about the prior damage to his property when he applied for an insurance policy, and thus State Farm already knew about the damage when he made a claim against his policy. ECF No. 46 at 6. This argument contradicts Karkar's simultaneous assertion that there *was* no reportable damage to the property prior to the 2012 incident. Id. More importantly, Karkar's argument suggests that State Farm's motion fails because State Farm did not rely on the concealment in Karkar's claim.

Karkar's suggestion is misplaced. An insurer seeking to void a policy on the grounds of fraud by the insured during the claims process does need not to prove reliance. The only relevant question is whether a reasonable insurer would think the representation or omission was important. See Essex Ins. Co. v. Hartford Fire Ins. Co., No. CV 12-05067 DMG DTBX, 2013 WL 3389549, at *8 n.6 (C.D. Cal. July 8, 2013); see also 46A C.J.S. Insurance § 1759 (2007) ("An insurance company need not establish that it relied to its prejudice upon false or fraudulent statements in a proof of loss in order to establish a breach of contract and void the policy.").

6

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). This is so because "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Id. (citing Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted). In Scott, the Supreme Court concluded that a police officer was entitled to summary judgment based on qualified immunity in light of videotape evidence capturing the plaintiff's reckless driving, which discredited plaintiff's assertions that there was little or no actual threat to innocent bystanders. Id. at 386. The Court found that the plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," and that the court below "should not have relied on such visible fiction"; instead, "it should have viewed the facts in the light depicted by the videotape." Id. at 380-81. See also U.S. v. Various Slot Machines on Guam, 658 F.2d 697, 701 (9th Cir. 1981) ("Even on a motion for summary judgment, a court is not compelled to give weight to an allegation that is incontrovertibly demonstrated to be false.").

Similarly, in this case, the assertion that the balcony side of the home had no water damage before the tree branch incident in 2012 is "blatantly contradicted by the record." Scott, 550 U.S. at 380. The Farmers claim file, including the September 2, 2010, loss report, the denial letter, and the photographs of the property, demonstrate that the balcony side of the home had extensive water damage in 2010, and that Karkar knew about this damage when he filed his 2012 claim with State Farm. ECF No. 42, Exs. 25, 28, 33. The documents also show that Plaintiff claimed substantially similar damage to Farmers in 2010 and to State Farm in 2012. Compare ECF No. 42, Exs. 23-24, with ECF No. 42, Ex. 33. The Court concludes that no reasonable jury could believe Karkar's assertions concerning prior water damage, and that there is therefore no genuine issue of fact as to whether Karkar knowingly and willfully made false statements to State Farm

7

concerning prior damage during the processing of his claim.  The Court also concludes that any reasonable insurer would find prior water damage to the affected areas of the house relevant to its investigation of Karkar's 2012 water damage claim, and that a misrepresentation concerning prior water damage is therefore material as a matter of law.  Where "the misrepresentation is material and the insured willfully makes it with knowledge of its falsity," "intent to defraud the insurer is necessarily implied."  Cummings, 202 Cal. App. 3d at 1418.

In summary, the Court finds that there is no genuine dispute for trial on the question of whether Plaintiff breached the insurance contract by making knowingly false statements as to material matters with the intent to deceive State Farm.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's breach of contract claim will be granted.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

"Generally, an insured has no claim for breach of the implied covenant of good faith and fair dealing against his insurer unless policy benefits are due because 'the covenant is based on the contractual relationship between the insured and the insurer.'"  Ram, 807 F. Supp. 2d at 860 (quoting Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 36 (1995)).  "California courts have identified specific exceptions to the rule that a plaintiff may not bring a claim for breach of the implied covenant of good faith and fair dealing absent a valid breach of contract claim," including situations where an insurer induced the plaintiff not to appear for an examination under oath and where the insurer did not investigate a non-covered claim but instead worked to intimidate the insured into settling.  Id. at 860-61 (citing Brizuela v. Calfarm Ins. Co., 116 Cal. App. 4th 578, 594-95 (2004); Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 578 (1973)).  But no such circumstances are present in this case.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is granted.

### C. Evidentiary Objections

Defendant filed a series of objections to evidence offered by Plaintiff in support of his opposition to the summary judgment motion.  ECF No. 55.  Defendant's objections to the Supplemental Declaration of Jimmy Harrington are overruled on the merits.  The balance of State Farm's objections are overruled as moot, because the Court did not rely on the remaining

objected-to evidence in determining whether Karkar made material misrepresentations or omissions in the claims process and because Plaintiff's claims cannot survive the motion notwithstanding the contested declarations. Therefore, discussion of those evidentiary objections is unnecessary. See Ogden v. Bumble Bee Foods, LLC, No. 12-cv-01828-LHK, 2014 WL 27527, at *15 (N.D. Cal. Jan. 2, 2014); Robinson v. Alameda Cnty., No. 12-cv-00730-JCS, 2013 WL 4494655, at *13 (N.D. Cal. Aug. 19, 2013). Accordingly, these objections are denied as moot.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: July 23, 2015

_____
JON S. TIGAR
United States District Judge